IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| EUGENE LEMONDE WILLIAMS, JR., : | |
| Plaintiff, : | |
| v. : | NO. 5:12-cv-145 (MTT) |
| MELVIN KENNETH JOHNSON, *et al.*, : | |
| Defendants. : | Proceedings Under 42 U.S.C. §1983 |
| _____ : | Before the U.S. Magistrate Judge |

## RECOMMENDATION

Before the Court is a Motion for Summary Judgment filed by Defendants Melvin Kenneth Johnson, John William Jackson, and Edward Eugene Royal. Doc. 29. Because Plaintiff Eugene Lemonde Williams, Jr. has failed to demonstrate a genuine issue of material fact regarding Defendants' alleged use of excessive force and alleged deliberate indifference to Plaintiff's serious medical needs, and because Defendants have shown that they are entitled to judgment as a matter of law, it is hereby **RECOMMENDED** that Defendants' motion be **GRANTED**.

## PROCEDURAL HISTORY

On April 22, 2012, Plaintiff Eugene Lemonde Williams filed his Complaint pursuant to 42 U.S.C. § 1983, alleging that various Jones County police officers violated his constitutional rights during his arrest and subsequent confinement in the Jones County Law Enforcement Center. Pl. Compl. (Docs. 1, 9). Plaintiff's Complaint arises from two incidents. Id. Plaintiff alleges that, on May 10, 2010, Defendants John William Jackson and Melvin Kenneth Johnson used excessive force against Plaintiff while Plaintiff was standing in his driveway. Id. Plaintiff further contends that Defendant Jackson, Defendant Johnson, and Officer Senn failed to provide

1

Plaintiff adequate medical care upon his arrival at the Jones County LEC. Id. Additionally, Plaintiff alleges that, on July 9, 2010, Defendant Edward Eugene Royal used excessive force and denied Plaintiff medical care while Plaintiff was incarcerated at the Jones County LEC. Id.

Following a frivolity review pursuant to 28 U.S.C. § 1915A, the Court allowed Plaintiff's claims to proceed against Defendants Johnson, Jackson, and Royal. Doc. 11. The Court dismissed Plaintiff's claims against Officer Senn. Id. On December 6, 2012, Defendants filed the instant Motion for Summary Judgment. Doc. 26.

FACTUAL BACKGROUND

Viewed in the light most favorable to Plaintiff, the evidence in this case shows that on two separate occasions Jones County police officers used force, including pepper-spray, in response to Plaintiff's failure to comply with instructions. Pl. Compl. (Docs. 1, 9); Murray Aff. (Doc. 30-2); Def. Ex. 1 at 55-61 (Doc. 30-1).[1] The first occasion occurred on May 10, 2010, when Defendants Johnson and Jackson responded to a disturbance at Plaintiff's residence. Def. Ex. 1 at 32-34. (Doc. 30-1). Following the altercation with Defendants Johnson and Jackson, Plaintiff was arrested and taken to the Jones County LEC. Id. at 72. The second occasion occurred on July 9, 2010, when Plaintiff refused to dress himself after showing at the Jones County LEC. Murray Aff. (Doc. 30-2).

1. The May 10, 2010 Incident

On May 10, 2010, Defendants Johnson and Jackson were called to a house in response to a domestic disturbance between Plaintiff and his girlfriend. Def. Ex. 1 at 32-34 (Doc. 30-1).

---

[1] In support of their motion, Defendants submitted affidavits from non-parties Sergeant Grover Murray (Doc. 30-2), Nurse Pamela Stevens (Doc. 30-3), and Nurse Tondra Barns (Doc. 30-6). Defendants also submitted the trial transcript from the jury trial where Plaintiff was found guilty of felony obstruction of an officer (Def. Ex. 1.; Doc. 30-1) and an affidavit from Defendant Royal (Doc. 30-5). Plaintiff filed two responses to Defendants' motion. Docs. 33, 36. Both of Plaintiff's responses, however, were essentially unresponsive to the facts alleged in support of Defendants' motion.

2

Plaintiff resided at the house with his girlfriend and her mother, who was the homeowner and the person who reported the incident to the police. Id. at 126-30. When Defendants Johnson and Jackson arrived at the house, Plaintiff's girlfriend and her mother informed the officers that they wanted Plaintiff to leave the house. Id. at 133. Defendants Johnson and Jackson attempted to persuade Plaintiff to leave on his own accord, but Plaintiff would not leave the house. Id. at 43-44. After Plaintiff finally went outside, he proceeded to stand in the driveway for thirty minutes, refusing to leave the property. Id. at 55. Defendants Johnson and Jackson warned Plaintiff that he would be taken to jail if he continued to refuse to leave the property. Id. at 53.

Because Plaintiff refused to leave the property, Defendant Johnson grabbed Plaintiff's shoulder attempting to force him to leave. Id. at 55-56. Plaintiff then began kicking and throwing his arms, striking Defendant Jackson. Id. at 56. Defendants Jackson and Johnson then took Plaintiff to the ground to subdue Plaintiff. Id. When Plaintiff continued to struggle, Defendant Jackson allegedly choked Plaintiff. Id.; Pl. Compl. (Docs. 1, 9). Defendant Johnson then warned Plaintiff that he would be pepper-sprayed if refused to stop resisting. Def. Ex. 1 at 56 (Doc. 30-1). Plaintiff continued to kick and throw his arms, and Defendants were concerned that Plaintiff would reenter the house. Id. at 57. Because Defendants could not subdue Plaintiff using only their hands, Defendant Johnson attempted to pepper-spray Plaintiff. Id. at 60. Plaintiff knocked the pepper-spray out of Defendant Johnson's hands, and Defendant Jackson then pepper-sprayed Plaintiff. Id. Because of Plaintiff's continuous struggling, a substantial amount of pepper-spray was expelled. Id. at 61. Plaintiff was then taken to the ground, and Plaintiff felt a shocking pain in his stomach and lost feeling in his leg. Pl. Compl. (Doc. 1, 9).

At that point, Defendants Johnson and Jackson were able to handcuff Plaintiff. Id. Defendants then lifted Plaintiff and carried him to the patrol car. Def. Ex. 1 at 62. Plaintiff would

3

not get in the patrol car voluntarily, causing Defendant Johnson to place Plaintiff in the vehicle on one side and Defendant Jackson to pull Plaintiff in from the other side. Id. Defendants then allegedly "slammed" the door on Plaintiff's foot. Pl. Compl. (Docs. 1, 9). Plaintiff contends that his foot was bleeding and broken due to the door closing on his foot. Id. Defendant Jackson did not notice any injury to Plaintiff's foot. Def. Ex. 1 at 74.

Upon his arrival at the Jones County LEC on May 10, 2010, Plaintiff made no complaints to staff regarding his foot. Murray Aff. (Doc. 30-2). Additionally, Jones County LEC policy prohibits officers from accepting a person for booking if the person is suffering from a serious injury or is in need of immediate medical care. Id. On May 12, 2010, Nurse Pamela Stevens examined Plaintiff's foot after Plaintiff complained of an injured toe. Stevens Aff. (Doc. 30-3). Nurse Stevens noticed a flap of nail and skin hanging from Plaintiff's toe, but did not notice any bleeding, pus, or drainage. Id. Plaintiff put a bandage on his toe, and Nurse Stevens splinted his toe. Id.

Based on the May 10, 2010 incident with Defendants Jackson and Johnson, Plaintiff was charged and indicted for felony obstruction of an officer. See Def. Ex. 1 (Doc. 30-1). Plaintiff proceeded to trial, and a jury found Plaintiff guilty of felony obstruction of an officer. Id.; Def. Ex. 4 (Doc. 30-4).

   2. The July 9, 2010 Incident

On July 9, 2010, while incarcerated at the Jones County LEC, Plaintiff refused to dress himself after showering. Murray Aff. (Doc. 30-2). Officers instructed Plaintiff to dress numerous times, but Plaintiff continued to refuse. Id. Sergeant Murray instructed Defendant Royal and another officer to dress Plaintiff. Id. Because Plaintiff resisted the officers' efforts to dress Plaintiff, Defendant Royal pepper-sprayed Plaintiff. Id.; Royal Aff. (Doc. 30-5). Plaintiff then

4

attempted to grab the pepper-spray from Defendant Royal. Id. Defendant Royal responded by taking Plaintiff to the ground and striking Plaintiff's head with his knee. Royal Aff. (Doc. 30-5). Plaintiff contends that he was sprayed five times. Pl. Compl. (Doc. 1). Sergeant Murray testifies that Plaintiff was left in the shower to decontaminate after Plaintiff calmed down. Murray Aff. (Doc. 30-2). Neither Defendant Royal nor Sergeant Murray noticed any visible injuries as a result of the force. Id.; Royal Aff. (Doc. 30-5).

The same day, Plaintiff filled out a medical request form because his eyes were irritated. Barnes Aff. (Doc. 30-6). Plaintiff informed Nurse Tondra Barnes that his eyes hurt because he had been pepper-sprayed three times. Id. Nurse Barnes examined Plaintiff and determined that Plaintiff suffered from mild irritation in his right eye. Id. Plaintiff's lungs were clear and he was breathing well. Id. Nurse Barnes gave Plaintiff eye drops and directed Plaintiff to administer drops in his right eye four times a day. Id.

## LEGAL STANDARD

In accordance with Rule 56 of the FEDERAL RULES OF CIVIL PROCEDURE, summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Cleotex Corp. v. Catrett, 477 U.S.

317, 323 (1986) (internal quotation marks omitted). If the moving party meets this burden, the burden shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the moving party is not entitled to judgment as a matter of law." Id. at 324-26. If the evidence presented by the non-movant is "not significantly probative" or is "merely colorable," then summary judgment must be granted. Anderson, 477 U.S. at 249. In fact, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

## DISCUSSION

Plaintiff alleges that the use of force and pepper-spray by Defendants Johnson and Jackson on May 10, 2010, and by Defendant Royal on July 9, 2010 constituted excessive force in violation of his constitutional rights. Plaintiff also contends that Defendants denied him medical treatment on both occasions in violation of his constitutional rights. Plaintiff has failed to show, however, that the officers' use of force was unreasonable under the circumstances or that he was denied proper medical care at the JCLEC. As such, Plaintiff has failed to demonstrate a genuine issue of material fact, and Defendants have shown that they are entitled to judgment as a matter of law.

### The May 10, 2010 Incident

Plaintiff contends that Defendants Johnson and Jackson applied excessive force while attempting to remove Plaintiff from his residence and subsequently arresting him on May 10, 2010. Specifically, Plaintiff alleges that he was choked, pepper-sprayed, and had his foot slammed in the police car door. Plaintiff also alleges that Defendants Johnson and Jackson refused to allow Plaintiff to receive medical treatment for his foot upon his arrival at the Jones

County LEC. Even when viewed in a light most favorable to Plaintiff, the evidence in the record does not show that Defendants used excessive force or that they were deliberately indifferent to Plaintiff's serious medical needs.

1. Excessive force

Plaintiff has failed to show that Defendants' use of force on May 10, 2010 was excessive. The use of force against an arrestee is governed by the Fourth Amendment. Hadley v. Gutierrez, 526 F.3d 1324, 1329 (11th Cir. 2008). "The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." Lee v. Ferraro, 284 F.3d 1188, 1197 (11th Cir. 2002). Courts, however, have "long recognized that the right to make an arrest or investigatory stop is necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Id. (quoting Graham v. Connor 490 U.S. 386, 396 (1989)). Additionally, courts have consistently found that using pepper-spray is reasonable where the arrestee is "either resisting arrest or refusing police requests" and is a "very reasonable alternative to escalating a physical struggle with an arrestee." Vinyard v. Wilson, 311 F.3d 1340, 1348 (11th Cir. 2002).

Whether an officer's use of force constitutes excessive force is judged by an "objective reasonableness" standard. Hadley, 526 F.3d at 1329. Factors to consider when determining if an officer's use of force was objectively reasonable include "(1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted, and (4) whether the force was applied in good faith or maliciously and sadistically." Id. (quoting Slicker v. Jackson, 215 F.3d 1225, 1233 (11th Cir. 2000)). Court also consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the

safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396.

The evidence in the record in this case indicates that the use of force by Defendant Jackson and Defendant Johnson against Plaintiff was reasonable. Plaintiff was uncooperative and refused to comply with Defendants' instructions to leave the property. Defendants gave Plaintiff an opportunity to leave on his own accord, but Plaintiff refused. When Defendant Johnson used a small amount of force to encourage Plaintiff to leave by grabbing Plaintiff's shoulder, Plaintiff became combative and struck Defendant Jackson. At that point Defendants took Plaintiff to the ground and warned Plaintiff that pepper-spray would be used if he continued to resist. Plaintiff refused to comply with Defendants' instructions and continued to struggle, so Defendants pepper-sprayed Plaintiff. The evidence shows that some force was needed to subdue Plaintiff, that Defendants' did not use more force than was necessary to subdue Plaintiff, and that Defendants ceased using force once Plaintiff was secured in handcuffs. Plaintiff did not suffer a significant injury as a result of Defendants' use of force.

The evidence does not show that Defendants' slamming Plaintiff's foot in the door constituted excessive force. Although Plaintiff was handcuffed, he continued to refuse to comply with Defendants and get in the police car voluntarily. As such, it required both Defendants to pull Plaintiff into the car. That his foot was allegedly slammed in the door does not constitute excessive force because Plaintiff has failed to show that the alleged action was performed maliciously. Although Plaintiff contends that the action caused bleeding and broke his foot, the uncontroverted evidence shows that Plaintiff did not suffer a significant injury. See Bennett v. Parker, 898 F.2d 1530, 1533-34 (11th Cir. 1990) (even though facts must be viewed in favor of the non-moving party, unsupported conclusory allegations may be discounted when they are

8

contradicted by the record). Accordingly, Plaintiff has failed to show that Defendants Jackson and Johnson used excessive force during the May 10, 2010 incident.

2. Deliberate Indifference

Plaintiff has also failed to show that Defendants Jackson and Johnson were deliberately indifferent to his serious medical needs. Because Plaintiff was a pretrial detainee at the JCLEC, his claims must be examined under the Due Process Clause of the Fourteenth Amendment. Snow ex rel. Snow v. City of Citronelle, Ala., 420 F.3d 1262, 1268 (11th Cir. 2005). The standards to establish a deliberate indifference claim under the Fourteenth Amendment, however, are identical to the standards under the Eight Amendment. Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla., 402 F.3d 1092, 1115 (11th Cir. 2005).

To establish deliberate indifference, the prisoner must satisfy both an objective and a subjective component. Campbell v. Sikes, 169 F.3d 1353, 1363 (11th Cir. 1999). With regard to the objective component, a prisoner must allege both an objectively serious medical need that, if left unattended, poses a substantial risk of serious harm, and also that the response by the prison official to that need was poor enough to constitute an unnecessary and wanton infliction of pain. Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000). With respect to the subjective component, a prisoner must allege, and ultimately prove, three facts: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and, (3) by conduct that is more than mere negligence. McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999). Additionally, as with any tort claim, the prisoner must show that an injury was caused by the defendant's wrongful conduct. See Hale v. Tallapoosa County, 50 F.3d 1579, 1582 (11th Cir. 1995).

The evidence in this case fails to show that Defendants Jackson and Johnson were deliberately indifferent to Plaintiff's medical needs. As discussed indicated above, Plaintiff's

allegation that his foot was bleeding and broken is unsupported by the record. There is no indication that Plaintiff informed anyone during his booking on May 10, 2010, that he was severely injured, and Sergeant Murray testifies that Plaintiff would not have been booked without treatment had he suffered the injuries alleged. Plaintiff was seen by Nurse Stevens two days later when he complained of foot pain. Nurse Stevens testifies that Plaintiff did not present any indication that he was seriously injured. Plaintiff fails to establish how Defendants Jackson and Johnson were responsible for providing medical treatment and fails to show that Defendants denied Plaintiff treatment in any way. Accordingly, Plaintiff's deliberate indifference claims against Defendants Jackson and Johnson are without merit.

### The July 9, 2010 Incident

Plaintiff contends that Defendant Royal applied excessive force after Plaintiff refused to dress himself on July 9, 2010. Specifically, Plaintiff alleges that he was pepper-sprayed and hit in the head. Plaintiff also alleges that he was placed in a cell and not allowed to shower for three weeks. Additionally, Plaintiff contends that Defendant Royal refused to allow Plaintiff to receive medical treatment following the incident. The evidence in the record, however, does not show that Defendant Royal used excessive force or was deliberately indifferent to Plaintiff's serious medical needs.

   1. Excessive Force

Plaintiff has failed to establish that Defendant Royal used excessive force following Plaintiff's refusal to dress himself on July 9, 2010. The use of force against a pre-trial detainee is governed by the Due Process Clause of the Fourteenth Amendment. Bozeman v. Orum, 422 F.3d 1265, 1271 (11th Cir. 2005). A claim of excessive force under the Fourteenth Amendment, however, is analyzed as if it were an excessive force claim under the Eighth Amendment. Id. To

establish a claim of excessive force under the Eighth Amendment, an inmate must present evidence to show that the force was applied "maliciously and sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline." Whitley v. Albers, 475 U.S. 312, 320-21 (1986). Courts evaluating claims of excessive force consider five factors "relevant to ascertaining whether force was used 'maliciously and sadistically for the very purpose of causing harm.'" Campbell v. Sikes, 169 F.3d 1353, 1375 (11th Cir. 1999) (quoting Whitley, 475 U.S. at 321). These five factors are:

(1) the extent of the injury;

(2) the need for application of force;

(3) the relationship between that need and the amount of force used;

(4) any efforts made to temper the severity of a forceful response; and

(5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them.

Id.

The use of force against an inmate "does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." Campbell, 169 F.3d at 1372. Prison officers are given a wide range of deference acting to preserve discipline and security, and "guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding." Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007). Courts have held that even simple inmate disobedience, in the form of refusal to obey verbal orders, may justify the use of pepper-spray. See Danley v. Allen, 540 F.3d 1298, 1307 (11th Cir. 2008).

In this case, Plaintiff has failed to show that Defendant Royal applied force maliciously and sadistically for the very purpose of causing harm. Plaintiff repeatedly refused orders and would not get dressed after showering. When Defendant Royal attempted to dress Plaintiff, Plaintiff resisted. Defendant Royal then pepper-sprayed Plaintiff. After Plaintiff attempted to grab the pepper-spray, Defendant Royal responded by taking Plaintiff to the ground and striking Plaintiff's head with his knee. Because Plaintiff was combative, the amount of force used was not disproportionate to the force necessary to maintain order and discipline.

Plaintiff's allegation that he was placed in a cell and refused a shower to decontaminate for three weeks is contradicted by the fact that he was seen by Nurse Barns on the day of the incident. Plaintiff's complaints to Nurse Barnes regarding the alleged incident are inconsistent with the facts alleged in his Complaint. Additionally, Plaintiff has failed to show that he suffered a serious injury as a result of Defendant Royal's actions. Accordingly, Plaintiff has failed to show that Defendant Royal's actions constituted excessive force.

2. Deliberate Indifference

Plaintiff has also failed to show that Defendant Royal was deliberately indifferent to his serious medical needs. Plaintiff has not presented evidence showing that Defendant Royal was subjectively aware of a serious medical need or that Defendant Royal prevented Plaintiff from receiving medical treatment. Defendant Royal has submitted undisputed medical evidence showing that Plaintiff was seen by Nurse Barnes on the day of the incident. Nurse Barnes examined Plaintiff and determined that Plaintiff suffered from mild irritation in his right eye, likely caused by the pepper-spray. Nurse Barnes testifies that Plaintiff appeared normal and was breathing well.  Nurse Barnes gave Plaintiff eye drops for his irritation. As such, Plaintiff has

failed to show that he did not receive proper treatment or that Defendant Royal was deliberately indifferent.

## Qualified Immunity

As an additional basis for summary judgment, Defendants are entitled to qualified immunity regarding all of Plaintiff's claims. "Qualified immunity protects government officials performing discretionary functions from civil trials [...] and from liability if their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." Santamorena v. Georgia Military College, 147 F.3d 1337, 1339-1340 (11th Cir. 1998) (internal quotations and citations omitted). Stated another way, qualified immunity "offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." Oliver v. Fiorino, 586 F.3d 898, 904 (11th Cir. 2009) (internal quotations and citations omitted). A prison employee acting within the scope of his discretionary authority is entitled to qualified immunity "unless the plaintiff can demonstrate: first, that the facts when viewed in a light most favorable to the plaintiff establish a constitutional violation; and, second, that the illegality of the officer's actions was 'clearly established' at the time of the incident." Id. at 905. Courts need not consider the two prongs of the analysis in sequence, and a failure to establish either prong requires the claim to be dismissed. Id.

As discussed above, Plaintiff has failed to demonstrate that Defendants' actions amounted to constitutional violations. As such, Defendants are entitled to qualified immunity. Moreover, Plaintiff has failed to show that Defendants' actions violated clearly established law. Regarding Plaintiff's excessive force claims, Plaintiff has failed to present clearly established law demonstrating that the use of pepper-spray and other force was unnecessary under the

circumstances. Although it is clearly established that an officer may not use pepper-spray on a plaintiff who is already handcuffed and secured, Plaintiff was unsecured and combative on both occasions at issue in this case. See Vinyard, 311 F.3d 1340. In connection with his medical treatment claims, Plaintiff has failed to present clearly established law showing that Defendants' actions constituted deliberate indifference. Accordingly, Defendants have established that they are entitled to qualified immunity.

## CONCLUSION

Because the evidence in the record of this case is insufficient to permit a finding that Defendants used excessive force or were deliberately indifferent to Plaintiff's serious medical needs, it is hereby **RECOMMENDED** that Defendants' Motion for Summary Judgment be **GRANTED**. Pursuant to 28 U.S.C. § 636 (b)(1), the parties may serve and file written objections to this **RECOMMENDATION** with the district judge to whom the case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

**SO RECOMMENDED**, this 19th day of July, 2013.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge